DONNA JEAN REEVES, BY AND THROUGH HER NEXT FRIEND, MRS. FRED REEVES v. GENE KERLEY CAMPBELL AND ROBERT WILLIAM CHEEK.

(Filed 7 April, 1965.)

**1. Automobiles § 11—**

The lights required by G.S. 20-129 on an automobile operated at night are to enable the operator to see what is ahead of him and to inform others of the approach of his vehicle, and the operation of a vehicle at night without lights or with improper lights is negligence.

**2. Automobiles § 41l—    Evidence of negligence in hitting pedestrian on highway held for jury.**

Evidence tending to show that defendant was operating his vehicle at night without lights, or with improper lights, that he saw a bus which he knew was returning children to their homes after a basketball game stopped to the right of the highway, that defendant continued to travel at a speed of about 45 miles per hour, did not see plaintiff, a fifteen year old girl, who had alighted from the bus and was crossing the highway in front of the bus toward an intersecting rural road, until she was some three car lengths away, and that defendant's car left skid marks some 32 feet before impact and some 90 feet thereafter, *held* sufficient to be submitted to the jury on the issue of defendant's negligence.

**3. Automobiles § 42k—**

Evidence tending to show that plaintiff pedestrian could see a car approaching from the west for a distance of some 800 feet, that she stopped before attempting to cross the highway toward an intersecting rural road, that she failed to see defendant's car approaching from the west because it did not have lights burning or had improper lights, and that she was struck by defendant's car in the north traffic lane, *held* not to disclose contributory negligence as a matter of law on the part of plaintiff.

APPEAL by defendants from *Johnston, J.,* Regular September 1964 Civil Session of WILKES.

Minor plaintiff (Jean) was, on the night of February 20, 1962, when crossing Highway 268, struck and injured by an automobile owned by defendant Cheek, operated by his agent, defendant Campbell. Jean was then 15 years of age. This action was instituted to recover damages resulting from the alleged negligent operation of the automobile.

Defendants denied plaintiff's allegations of negligence and, as an additional defense, pleaded contributory negligence.

The court overruled defendants' motion to nonsuit. The jury returned a verdict in conformity with plaintiff's contentions. Judgment was entered on the verdict. Defendants excepted and appealed.

*Hayes & Hayes for defendant appellants.*
*McElwee & Hall and Moore & Rousseau for plaintiff appellee.*

PER CURIAM.    Defendants assign as error the denial of their motion to nonsuit, insisting plaintiff not only failed to offer evidence on which the jury could find negligent operation of the automobile, but all of the evidence establishes, as a matter of law, contributory negligence.

The evidence would permit, but not compel, the jury to find these facts: Jean and Campbell were students at the North Wilkes High School. Jean was a member of the school basketball team. Her school and the Appalachian team met in competition at Boone the night Jean was injured. She, the team coach, and other students went to Boone in

a chartered bus. Campbell drove other students. On the return trip, the bus stopped at a soda shop in North Wilkesboro for refreshments. Campbell did likewise.

The bus left the soda shop to deliver its passengers to their homes. Jean lived on a rural road, which made a "T" intersection with No. 268, in a small community half or three-quarters of a mile east of North Wilkesboro. Highway 268 is 20 feet wide at the intersection. The right, south, shoulder in the area of the intersection is 10 feet wide. Beyond the shoulder is a paved parking area in front of a store. When the bus reached the intersection, it pulled to the right to permit passengers to alight outside of the line of traffic. The bus stopped 8 feet to the right, south of the highway, headed in an easterly direction. It had its lights on. Another car following the bus also pulled off the traveled portion of the highway, and stopped about 100 feet to the rear of the bus. It likewise had its lights burning.

The rural road on which Jean lived intersected No. 268 from the north, hence Jean had to cross the highway to reach her home. When she alighted from the bus, she went east so as to cross in front of the bus. When she reached the highway, she stopped. She testified: "I looked up and down the road and there wasn't anything coming; so I started running across the street. When I got out approximately in the middle of the highway there was car lights pulled on. And when the lights were pulled on, the car started toward me and I knew I wanted to get out of its way and I kept going on towards home, on across the highway, and it kept coming over towards me. The car then struck me." She was struck in the middle of the north lane. When the car lights were pulled on, it was 35 or 40 feet from her.

One standing in front of the bus, looking west, had an unobstructed view for 800 feet or thereabouts. There were skid marks in the highway, beginning 32 feet, 7 inches west of the point where plaintiff was struck. These skid marks continued another 90 feet in a northeastwardly direction to a point where plaintiff fell off the fender of the car Campbell was operating. The maximum permissible speed at the place where plaintiff was injured was 45 m.p.h. Campbell left the soda shop some five minutes after the bus left. He knew it was loaded with school children, who were being taken to their homes. According to Campbell's testimony, he was traveling 45 m.p.h. when he saw the bus stopped on the south side of the highway. When 500 feet away, he recognized it as the bus carrying the school children to their homes. When he saw it, he thought it was stopped to permit a child to alight and go home. He did not reduce his speed, but continued at 45 m.p.h. When he first saw plaintiff, she was at or near the center of the highway. He was then two or three car lengths from her.

Motorists, operating at night, must light their vehicles, G.S. 20-129. The lights required by our statute serve two purposes: first, to enable the operator of the automobile to see what is ahead of him; second, to inform others of the approach of the automobile.

The evidence in the light most favorable to plaintiff would permit a jury to find that Campbell, at night, was driving his automobile without lights; or, if he had lights on, they were not of the kind required by the statute, and were not sufficient to enable him to see what was in the path ahead of him, or to permit others on the highway to be informed of his approach. One who operates a vehicle at night without lights, or with improper lights, is negligent.

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing." G.S. 20-141. Would a reasonably prudent person, seeing a bus stopped on the highway, when he knew it was returning children to their homes after a basketball game, continue to travel at a speed of 45 m.p.h? The evidence in this case does not establish a violation of G.S. 20-217, but, accepting plaintiff's version of the facts, the spirit and purpose of the statute was violated. There is ample evidence to justify the jury's finding that Campbell was negligent, which negligence was a proximate cause of plaintiff's injury.

It is equally clear, we think, that the evidence does not establish contributory negligence, as a matter of law. An automobile properly equipped with lights would, with nothing to obstruct the view, be visible for 800 feet. Jean, before attempting to cross the highway, looked for approaching vehicles. None were in view. Could she not reasonably anticipate that she could traverse the 20 feet before a motor vehicle, operated at a lawful speed, would travel 800 feet? Was she obligated to anticipate a violation of the statute requiring motor vehicles to carry lights at night? The answers were for the jury. *Kellogg v. Thomas,* 244 N.C. 722, 94 S.E. 2d 903. Could Campbell ignore the provisions of G.S. 20-173(a) and 20-38(1)? *Griffin v. Pancoast,* 257 N.C. 52, 125 S.E. 2d 310, answers.

We have examined defendants' other assignments of error and discover neither prejudicial error, nor anything requiring discussion.

No error.