STATE OF NORTH CAROLINA v. PHILLIP GERMANE FLEMING

No. 9118SC673

(Filed 5 May 1992)

1. **Searches and Seizures § 12 (NCI3d) — pat-down and questions — seizure of person**

   A seizure of defendant occurred within the meaning of the Fourth Amendment when an officer began to pat him down while simultaneously asking him questions.

   **Am Jur 2d, Search and Seizure § 33.**

   **What constitutes "seizure" within meaning of Federal Constitution's Fourth Amendment — Supreme Court cases. 100 L. Ed. 2d 981.**

2. **Searches and Seizures § 12 (NCI3d) — no reasonable suspicion of criminal activity — unlawful stop and frisk — seized evidence inadmissible**

   An officer did not have a reasonable articulable suspicion that defendant was engaged in criminal activity and thus had no right to "stop and frisk" defendant where the officer observed defendant and another man standing in an open area between two apartment buildings in a housing project at 12:10 a.m.; the housing project was known as an area where "crack" cocaine and other contraband were sold on a daily basis; the officer had not previously seen either of the two young men in the area of the housing project; when first observed, the two men were watching several officers who were standing on a public street; the officer then observed the two men walk in a direction that led away from the group of officers and begin walking down a public sidewalk in front of the apartments; and the officer stopped defendant and his compan-

ion and patted them down while simultaneously asking them questions. This initial seizure of defendant was unlawful, and "crack" cocaine discovered on defendant's person as a result of this unlawful seizure of defendant was not admissible in evidence at defendant's trial for trafficking in cocaine by possession.

**Am Jur 2d, Search and Seizure § 58.**

**Law enforcement officer's authority, under Federal Constitution's Fourth Amendment, to stop and briefly detain, and to conduct limited protective search of or "frisk," for investigative purposes, person suspected of criminal activity — Supreme Court cases. 104 L. Ed. 2d 1046.**

APPEAL by defendant from judgment entered 2 April 1991 in GUILFORD County Superior Court by *Judge Julius A. Rousseau, Jr.* Heard in the Court of Appeals 8 April 1992.

Defendant was indicted for trafficking in "crack" cocaine by possession. The case was tried on 1 April 1991. Prior to trial, defendant made a motion to suppress the evidence seized from his person on the date of the alleged offense. Defendant argued the search was improper and violated the Fourth Amendment. The trial court conducted a *voir dire*, pre-trial hearing to determine whether to grant the motion. Defendant did not offer any evidence at the hearing; the State offered evidence in the form of testimony by the officer who stopped defendant and subsequently seized the evidence. The State's evidence tended to show the following facts and circumstances.

On 23 September 1990, several Greensboro police officers were in the vicinity of the Ray Warren Homes housing project. The officers were members of a tactical division and were operating a drug suppression program in the project on this date. Officer J. Williams, a veteran officer of seventeen years and a member of the tactical division, described the Ray Warren Homes project as an area where numerous arrests for drug violations had been made and where "crack" cocaine and other contraband was sold on a daily basis. At approximately 12:10 a.m., Officer Williams observed defendant and another black male standing in an open area between two apartment buildings located on Best and Rugby Streets. When first observed, defendant and his companion were standing in the open area looking at the officers located on Best

Street. Officer Williams was out of his vehicle at the time talking to the other officers. Officer Williams further testified that the gentlemen "stood there and they watched us for a few minutes, and then the defendant and the other young man turned and started walking towards Rugby Street out of the area."

When the two young men started walking the other way, Officer Williams got into his vehicle and drove around to Rugby Street where the gentlemen were walking out from between two buildings. He then observed the defendant and the other male walking on the sidewalk along Rugby Street towards him. Officer Williams told the court he had never seen either of the two young men in the area of the housing project. On cross examination, he admitted he decided to stop them because he had never seen them. Officer Williams got out of his vehicle and asked them to "hold it a minute." At this time, defendant and the other male were approximately 35 to 40 feet from the officer. Defendant turned right towards Best Street, and Officer Williams said, "Come here." Defendant hesitated for approximately one minute, then both young men complied and approached the officer.

Officer Williams testified that when defendant approached he acted "real nervous." Officer Williams asked them to identify themselves and they both complied; neither were residents of the Ray Warren Homes project. When questioned about why he was in the area, defendant stated a friend had dropped him off and he was walking through. When asked if the conversation with defendant was before he patted him down, Officer Williams responded, "I was talking to him as I was patting him down." Officer Williams felt an object in defendant's underwear while he was patting him down. Officer Williams testified that when he asked defendant what the object was, defendant replied "crack cocaine." Pursuant to Officer Williams' instructions, defendant subsequently removed the object and placed it on Officer Williams' car hood.

The trial court made findings of fact and conclusions of law at the close of the hearing. The trial court concluded the evidence was admissible and therefore denied defendant's motion to suppress. After a trial on the merits, the jury found defendant guilty of trafficking in cocaine by possession. The trial court entered judgment sentencing defendant to seven years in prison. Defendant appealed.

STATE v. FLEMING

[106 N.C. App. 165 (1992)]

*Attorney General Lacy H. Thornburg, by Associate Attorney General H. Alan Pell, for the State.*

*Robert O'Hale, Assistant Public Defender of the Eighteenth Judicial District, for defendant-appellant.*

WELLS, Judge.

Defendant argues the trial court erred in denying his motion to suppress. Defendant contends the findings of fact were insufficient to support the trial court's conclusions of law regarding the reasonableness of the seizure.

In our review of the denial of defendant's motion to suppress, we must first determine whether there was competent evidence to support the trial court's underlying findings of fact. If the evidence presented was competent, the findings are conclusive and binding on appeal. *State v. Cooke*, 306 N.C. 132, 291 S.E.2d 618 (1982). We must then determine whether the findings of fact support the trial court's ultimate conclusions of law. *Id.*

Defendant does not contest whether there was competent evidence to support the findings of the trial court. Therefore, the findings are conclusive and binding on appeal. *State v. Cooke, supra.*

The determinative issue before us is whether the findings of fact support the conclusions of law. After hearing the evidence during the pre-trial hearing, the trial court concluded Officer Williams had articulable grounds for suspicion and therefore had the right to "stop and frisk" the defendant. Specifically, the trial court concluded that when the officer observed defendant and his companion, (who, based upon Officer Williams' knowledge, were unfamiliar to the area), in a "high drug area" at twelve o'clock midnight, Officer Williams had articulable grounds to suspect defendant was engaged or had been engaged in criminal conduct and therefore had the right to detain him and search him for weapons. The trial court further concluded that the evidence was admissible. Defendant contends the evidence presented at the hearing was insufficient for the trial court to conclude Officer Williams had a reasonable articulable suspicion to seize him. In order to determine if this conclusion of law is supported by the findings, we must examine whether the officer's actions constituted a seizure, and if so, whether that seizure was legally justified.

STATE v. FLEMING

[106 N.C. App. 165 (1992)]

**[1]**  A seizure of a person occurs only when (1) an officer has applied actual physical force to the person or, (2) absent physical force, the defendant submits to an officer's show of authority. *California v. Hodari D.*, 499 U.S. ---, 113 L.Ed.2d 690 (1991). When defendant approached Officer Williams, the officer immediately began to pat him down while simultaneously asking him questions. Thus, Officer Williams applied actual physical force to defendant's person and this action constituted a seizure. *Id. See. also Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889 (1968). (When a law enforcement officer takes hold of an individual and pats down the outer surface of his clothing, he has "seized" that individual within the meaning of the Fourth Amendment). Accordingly, the Fourth Amendment is applicable to the facts and circumstances in this case.

The Fourth Amendment to the United States Constitution provides that "[T]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. It protects all individuals, those suspected or known to be offenders as well as the innocent. *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 75 L.Ed. 374 (1931). This constitutional right of personal security applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest, *Davis v. Mississippi*, 394 U.S. 721, 22 L.Ed.2d 676 (1969); *Terry, supra*, and is applicable to the states through the Fourteenth Amendment. *Ker v. California*, 374 U.S. 23, 10 L.Ed.2d 726 (1963); *State v. Roberts*, 276 N.C. 98, 171 S.E.2d 440 (1970).

The Constitution does not prohibit all searches and seizures; it only protects against *unreasonable* searches and seizures. *Elkins v. United States*, 364 U.S. 206, 4 L.Ed.2d 1669 (1960). (Emphasis added.) Since Officer Williams' conduct did not rise to the level of a traditional arrest requiring probable cause, his conduct must be measured in light of the reasonableness standard established in *Terry v. Ohio, supra. State v. Thompson*, 296 N.C. 703, 252 S.E.2d 776, *cert. denied*, 444 U.S. 907, 62 L.Ed.2d 143 (1979). "A brief investigative stop of an individual must be based on specific and articulable facts as well as inferences from those facts, viewing the circumstances surrounding the seizure through the eyes of a reasonable cautious police officer on the scene, guided by his experience and training." *State v. Allen*, 90 N.C. App. 15, 367 S.E.2d 684 (1988). *See also Terry, supra; State v. Thompson, supra.* Law enforcement officers are required to have reasonable suspi-

cion, based on objective facts, that the individual is involved in criminal activity. *Brown v. Texas*, 443 U.S. 47, 61 L.Ed.2d 357 (1979).

[2]   Defendant argues that the facts of this case are analogous to those in *Brown v. Texas, supra.* In *Brown,* two police officers observed defendant and another person walking away from one another in an alley. The officers drove into the alley, approached defendant and asked him to identify himself and to explain what he was doing there. Defendant refused and told the officers they had no right to stop him. One of the officers told defendant he was in a high drug area; the other officer then "frisked" defendant and found nothing. At trial, one officer testified that he had stopped defendant because the situation "looked suspicious and we had never seen that subject in that area before." *Id.* Further, the area where defendant was stopped had a high incidence of drug traffic. The officers never claimed to suspect defendant of any specific misconduct, nor did they have any reason to believe defendant was armed.

The Supreme Court stated that "none of the circumstances preceding the officers' detention of [defendant] justified a reasonable suspicion that he was involved in criminal conduct." *Id.* There were no facts supporting the officers' conclusion that the situation in the alley "looked suspicious." *Id.* "The fact that [defendant] was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that [defendant] himself was engaged in criminal conduct." *Id.* The Court further concluded that the guarantees of the Fourth Amendment do not allow stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity. *Id.*

In the case now before us, at the time Officer Williams first observed defendant and his companion, they were merely standing in an open area between two apartment buildings. At this point, they were just watching the group of officers standing on the street and talking. The officer observed no overt act by defendant at this time nor any contact between defendant and his companion. Next, the officer observed the two men *walk* between two buildings, out of the open area, toward Rugby Street and then begin *walking* down the public sidewalk in front of the apartments. These actions were not sufficient to create a reasonable suspicion that defendant was involved in criminal conduct, it being neither unusual nor suspicious that they chose to walk in a direction which led away

from the group of officers. At this time, Officer Williams "stopped" defendant and his companion and immediately proceeded to ask them questions while he simultaneously "patted" them down.

We find that the facts in this case are analogous to those found in *Brown*. Officer Williams had only a generalized suspicion that the defendant was engaged in criminal activity, based upon the time, place, and the officer's knowledge that defendant was unfamiliar to the area. Should these factors be found sufficient to justify the seizure of this defendant, such factors could obviously justify the seizure of innocent citizens unfamiliar to the observing officer, who, late at night, happen to be seen standing in an open area of a housing project or walking down a public sidewalk in a "high drug area." This would not be reasonable.

Considering the facts relied upon by the officer, together with the rational inferences which the officer was entitled to draw therefrom, we conclude they were inadequate to support the trial court's conclusion that Officer Williams had a reasonable articulable suspicion that defendant was engaged in criminal activity. Were we to conclude otherwise, we would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches which the Fourth Amendment is specifically designed to protect against. *Terry, supra.*

As we have determined the initial seizure of defendant was a violation of his Fourth Amendment right against unreasonable searches and seizures, we next consider the admissibility of the evidence seized thereby. Evidence must be suppressed if its exclusion is required by the protection provided under the United States Constitution. N.C. Gen. Stat. § 15A-974 (1988). The Fourth Amendment forbids the government from convicting a person of a crime by using evidence obtained from him by an unreasonable search and seizure. *Mapp v. Ohio*, 367 U.S. 643, 6 L.Ed.2d 1081 (1961). *See also Davis v. Mississippi, supra,* ("illegally seized evidence is inadmissible at trial, however relevant and trustworthy the seized evidence may be as an item of proof."). For the foregoing reasons, the evidence obtained by Officer Williams as a result of his unreasonable seizure of defendant is inadmissible.

We are cognizant that there is a significant government interest in eradicating the sale and use of illegal drugs in our society, but we also recognize that, in order to protect our individual liberties, the Fourth Amendment forbids every search that is un-

reasonable. As Justice O'Connor wrote in a recent majority opinion, the "court[s] . . . [are] not empowered to suspend constitutional guarantees so that the Government may more effectively wage a 'war on drugs.' If that war is to be fought, those who fight it must respect the rights of individuals whether or not those individuals are suspected of having committed a crime." *Florida v. Bostick*, 501 U.S. ---, 115 L.Ed.2d 389 (1991).

In conclusion, we hold the trial court erred in denying defendant's motion to suppress and admitting the evidence seized from defendant. We therefore reverse the decision of the trial court. This being the only evidence presented by the State in support of defendant's indictment, we hereby order that defendant's conviction be vacated.

Since defendant's first assignment of error is dispositive of this appeal, we decline to address the constitutionality of the subsequent search of his person for weapons and his other assignment of error.

Judgment vacated.

Judges ARNOLD and EAGLES concur.