STATE OF NORTH CAROLINA v. WILLIAM DAVIS WATKINS

No. 9217SC953

(Filed 7 September 1993)

**Searches and Seizures § 12 (NCI3d)— DWI—no reasonable and articulable suspicion to stop vehicle—evidence suppressed**

The trial court properly granted defendant's motion to suppress in a DWI prosecution where an officer heard a radio transmission at 3:00 a.m. that there was a suspicious vehicle behind the Virginia-Carolina Well Drilling Company; the of-

---

STATE v. WATKINS

[111 N.C. App. 766 (1993)]

ficer did not know who had called the dispatcher or whether the caller was a reasonable, believable or reliable person; there was no description of the vehicle and no information as to why the vehicle was suspicious; the officer proceeded to the premises; there were two or three vehicles on the premises and one of several buildings had a light on inside; the officer had driven by the premises in the past and had observed cars parked on the premises but had never before investigated; he saw a car drive away from the premises and followed, turning on his blue light; the car was weaving within its lane but did not cross the center line or run off the road; the officer stopped the car to continue the suspicious vehicle investigation and not because of anything he observed about defendant's driving; the officer smelled alcohol on defendant after having him exit the vehicle and asked him to perform roadside sobriety tests; and defendant was subsequently arrested for driving while impaired. Although the State argued that an officer need only be able to articulate or verbalize the suspicion which precipitated the seizure, that is not the law in this state. The officer did not articulate any specific facts which would lead a reasonable police officer to suspect that the defendant was engaged in criminal activity; to allow the seizure of a vehicle because a vehicle has been reported suspicious without any facts to support the suspicion would also justify the seizures of innocent citizens.

**Am Jur 2d, Searches and Seizures §§ 69, 70, 73.**

Judge EAGLES dissenting.

Appeal by the State from order entered 1 July 1992 by Judge Joseph R. John, Sr. in Rockingham County Superior Court. Heard in the Court of Appeals 15 June 1993.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Jeffrey P. Gray, for the State-appellant.*

*McNairy, Clifford & Clendenin, by Locke T. Clifford and Robert O'Hale, for defendant-appellee.*

JOHNSON, Judge.

The State appeals the trial court's order suppressing all the evidence obtained by an officer pursuant to his stop of defendant's

vehicle. As a result of the stop, defendant was charged with driving while impaired.

The trial court's findings of fact were not excepted to on appeal; therefore, they are binding on this Court. The trial court found that:

1. On the early morning of February 11, 1990, the defendant was on the premises of the Carolina Virginia Well Drilling Company, hereafter referred to as "the company," with the permission of the owner/operator of the company, his friend Elbert Smith. The Well Company is located on the Purdie [sic] Loop Road, and is outside the city limits of the town of Stoneville.

2. The company had a recreational area with a cable tv set and a kitchen and bar which were used at night and on weekends by Mr. Smith and his friends, including the defendant. Some of these people lived in rural areas that were not served by cable and came to the company regularly with family members and friends to watch ball games, play cards, have fish fries, etc.

3. The defendant had been a regular visitor at the company for many years and was in the habit of coming to the company on a daily basis and sometimes staying until late at night.

4. There was an auto detailing business on the premises and it was not unusual for cars to be parked around the company during night or daylight hours.

5. Mr. Smith had given keys to several of his friends, including the defendant so that they could use the recreational facilities at the company whenever they chose to do so.

6. On the night in question, Officer Norman E. Harbor of the Stoneville Police Department was in his police squad car and was monitoring the Rockingham County Sheriff's Department radio frequency. The Rockingham County Sheriff's Department provides dispatch/communication services to/for the Stoneville Police Department as well as for its own department, and both agencies communicate using the same frequency.

7. At approximately 3:00 a.m. Officer Harbor overheard a radio transmission from the dispatcher to Officer Robert E. Knight saying that there was a "10-50" behind the Virginia-Carolina Well Drilling Company.

STATE v. WATKINS

[111 N.C. App. 766 (1993)]

8. No evidence was introduced that tended to show:

a. The identity of the dispatcher.

b. The identity of the caller.

c. Whether the caller refused to identify himself/herself.

d. What description of the vehicle the caller gave, if any.

e. Any statements given the dispatcher by the caller to support the conclusion that it was a "10-50," or "suspicious" vehicle.

f. Whether the dispatcher knew or recognized the caller.

g. What, if anything, the dispatcher did to verify the believability of the caller.

h. What, if anything, the caller told the dispatcher was "suspicious" about the vehicle.

9. The "10-50" was understood by Officer Harbor to mean "suspicious vehicle".

10. Officer Harbor had no idea who had made the call or whether the caller was a reasonable, believable or reliable person.

11. Officer Harbor was given no description of any alleged "suspicious vehicle" nor any information as to why any vehicle parked behind the company would be suspicious.

12. Deputy Robert Knight advised the dispatcher that he was a good distance away. Then Officer Harbour [sic] advised Deputy Knight of his location, which was at the Commer Road and the Settle Bridge Road, approximately five hundred feet away from the Virginia Carolina Well Company, and Deputy Knight asked Officer Harbor to assist him.

Officer Harbor proceeded to the company. There were "approximately" two or three vehicles on the premises when he arrived. When Officer Harbor arrived, he saw several buildings, one of which had a light on inside. He parked his car near the building with the light on and exited his car, and started toward the building.

13. Officer Harbor had driven past the Virginia Carolina Well Drilling Company on many occasions before, had seen cars

parked on the premises and had never investigated any of the cars on prior occasions. Officer Harbor testified that it would be normal to see a few cars on the premises during day and night.

14. While he was outside his vehicle, he observed a car pull out of the company parking lot onto the Priddy Loop Road and drive away. The car's light went on as he turned onto Priddy Loop Road. There is no evidence that the defendant saw Officer Harbor before Officer Harbor turned on his blue light.

15. Officer Harbor then got in his car and followed the car turning on his blue light as he pulled out of the company parking lot and turned left onto Priddy Loop Road.

16. Officer Harbor testified that he believed that "at three o'clock in the morning" any vehicle at a "place of business that is closed normally" is a suspicious vehicle.

17. Officer Harbor testified that the car was "continually weaving" within its lane, but that "he never crossed the center line or go off the road." Officer Harbor testified that as he followed the car with the blue light on, the car was continually weaving within its lane, but that he never crossed the center line or went off the road.

18. Officer Harbor turned on his blue lights and stopped the car for the purpose of continuing his "10-50" investigation and not because of anything he observed about the defendant's driving.

19. Upon stopping the vehicle and having the driver, the defendant William Davis Watkins, exit the vehicle, Officer Harbor smelled alcohol on the defendant and asked him to perform some roadside sobriety tests, and thereafter arrested him for driving while impaired.

On appeal, the State's sole assignment of error is that "the trial court erred in its conclusion of law that the officer did not have a reasonable and articulable suspicion to stop a vehicle coming from behind a building at a closed business at 3:00 a.m. without its headlights on or after following the vehicle and observing it weave in its lane." We disagree and affirm the decision of the trial court.

STATE v. WATKINS

[111 N.C. App. 766 (1993)]

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated [.]" Seizures of the person involving only a brief detention fall within the ambit of the Fourth Amendment and must therefore be excused by the reasonable or articulable suspicion of a police officer. *Davis v. Mississippi*, 394 U.S. 721, 22 L.Ed.2d 676 (1969).

The seizure of an individual in an investigative stop must be based on specific articulable facts as well as inferences from these facts, viewing the circumstances as would a reasonably cautious police officer on the scene, guided by his experience and training. *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889 (1968). Law enforcement officers are required to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. *Brown v. Texas*, 443 U.S. 47, 61 L.Ed.2d 357 (1979).

In the case *sub judice*, Officer Harbor did not articulate any specific facts which would lead a reasonable police officer to suspect that the defendant was engaged in criminal activity. Officer Harbor observed nothing more than defendant driving away from a closed business at night with his car headlights off. The officer testified at trial that there was nothing other than the vehicle coming out from the parking lot that made him follow the car.

The State contends, however, that because a tip was received from an anonymous caller who stated that a suspicious car was at the parking lot, Officer Harbor had a reasonable and articulable suspicion which allowed him to stop defendant's vehicle. The anonymous caller did not identify himself/herself, did not give a description of the car, and did not make any statements to support the conclusion that the car was suspicious. *Distinguish Alabama v. White*, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (anonymous caller gave many details which could be verified such as the name of the person, a good description of the car and an accurate prediction of where the person was going). In the instant case, the anonymous caller provided Officer Harbor with no details which could be verified in order to determine if defendant's vehicle was in fact the alleged suspicious vehicle. The call failed to state what made the vehicle suspicious. Moreover, the caller failed to state that any criminal activity was connected with the suspicious vehicle and the officer did not testify that he observed any criminal activity afoot.

Our decision finds support in *State v. Fleming*, 106 N.C. App. 165, 415 S.E.2d 782 (1992), where a police officer observed two young men at 12:10 a.m. in a drug area. The officer observed the two men watching him and other police officers for a few minutes; then, the two men turned and started walking the other way. The officer got in his vehicle and drove around to the men and told them to stop and come to him. The men complied, and the officers searched Fleming and found drugs. This Court held that the officer had only a generalized suspicion that the defendant was engaged in criminal activity, based upon the time, place and the officer's knowledge. Our Court further held that "should these factors be found sufficient to justify the seizure of this defendant, such factors could obviously justify the seizure of innocent citizens [.]" 106 N.C. App. at 171, 415 S.E.2d at 785-86. Likewise, in the case now before us, to allow the seizure of a vehicle because a vehicle has been reported suspicious without any facts to support the suspicious nature would also justify the seizures of innocent citizens. Accordingly, the decision of the trial court is affirmed.

We also note that during oral argument, the State argued that an officer need only be able to articulate or verbalize the suspicion which precipitated the seizure. That argument is untenable and is not the law in this State.

The decision of the trial court which granted defendant's motion to suppress is affirmed.

Judge WYNN concurs.

Judge EAGLES dissents by separate opinion.

Judge EAGLES dissenting.

I respectfully dissent and vote to reverse and remand for trial. Since there was brief radio communication between officers, we look to the "collective knowledge" of both officers in assessing whether a reasonable articulable suspicion existed for the stop here. *United States v. Kreimes*, 649 F.2d 1185 (5th Cir. 1981); *see State v. Zuniga*, 312 N.C. 251, 322 S.E.2d 140 (1984); *State v. Tilley*, 44 N.C. App. 313, 260 S.E.2d 794 (1979). The circumstances known by the law enforcement officers before approaching defendant were:

STATE v. WATKINS

[111 N.C. App. 766 (1993)]

(1) The time was around 3:00 a.m.;

(2) Deputy Knight of the Rockingham County Sheriff's Department was informed by the dispatcher that there was a suspicious vehicle in the vicinity of the Virginia-Carolina Well Company (hereinafter "Company");

(3) Deputy Knight, who had been a law enforcement officer for five and one-half years, normally went by the Company's premises ten times each night while patrolling;

(4) Based on his experience patrolling the area, Deputy Knight observed that by 1 a.m., all of the buildings on that side of the county are closed and the people are gone;

(5) Having checked the buildings of the Company on prior occasions, Deputy Knight had never found anyone at the recreation room as late as 3:00 a.m.;

(6) Officer Harbor, the responding officer with ten years experience, was from a neighboring jurisdiction and did not normally patrol the area;

(7) Officer Harbor observed that the businesses were closed and that defendant's vehicle did not have its headlights on until it reached the highway;

(8) Officer Harbor pulled over defendant's vehicle based upon Deputy Knight's request.

In our review of investigatory stops, it is clear that "[a] police officer . . . is not constitutionally required to be certain that a crime has occurred when he makes a stop." *United States v. Moore*, 817 F.2d 1105, 1107 (4th Cir. 1987), *cert. denied*, 484 U.S. 965, 98 L.Ed.2d 396 (1987) (citations omitted). *Alabama v. White*, 496 U.S. 325, 110 L.Ed.2d 301 (1990), is not inapposite to upholding the constitutionality of the investigatory stop presented here:

> Reasonable suspicion is a *less* demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. . . . Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police

and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances— the whole picture," that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.

*Id.* at 325, 110 L.Ed.2d at 309.

It should be particularly noted that this is simply not a case where "there was nothing other than the vehicle coming out from the parking lot that made [the officer] follow the car" as the majority suggests. Here, there was an anonymous tip transmitted by the radio dispatcher which led the officer to the parking lot. Granted, the tip was not detailed, but as the United States Supreme Court recognized in *White*, "ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations." *Id.* at 329, 110 L.Ed.2d at 308 (*citing Illinois v. Gates*, 462 U.S. 213, 237, 76 L.Ed.2d 527, 548 (1983) ). However, the existence of the "suspicious vehicle" described by the anonymous tip was corroborated when the investigating officer observed that defendant was driving his vehicle from behind and beside closed business premises in the wee hours of the morning *with* its headlights *off.* *See White*, 496 U.S. at 330-31, 110 L.Ed.2d at 309 (corroboration of anonymous tip can furnish reasonable suspicion); *United States v. Cutchin*, 956 F.2d 1216 (D.C. Cir. 1992). Additionally, common sense dictates that driving an automobile at night without illuminated headlights, even in a parking lot as here, places pedestrians at risk, and Officer Harbor was walking in the parking lot on foot when defendant's unlighted vehicle drove by him. *See generally, Reeves v. Campbell*, 264 N.C. 224, 227, 141 S.E.2d 296, 298 (1965). While we need not decide whether these circumstances are sufficient for the higher standard of probable cause for an arrest, it is alarming that the majority suggests that a "reasonable and cautious police officer on the scene, guided by his experience and training," *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779, *cert. denied*, 444 U.S. 907, 62 L.Ed.2d 143 (1979) (citation omitted), in this factual setting would not have a reasonable suspicion of criminal activity sufficient to justify a brief investigatory stop. Although Officer Harbor testified that defendant's weaving was not the cause of his decision for the investigatory stop, it is noteworthy that other cases have held that merely weaving within one's own lane

of traffic can present a reasonable articulable suspicion for an investigatory stop. *State v. Jones*, 96 N.C. App. 389, 395, 386 S.E.2d 217, 221 (1989), *disc. review denied, appeal dismissed*, 326 N.C. 366, 389 S.E.2d 809 (1990).

*Fleming*, 106 N.C. App. 165, 415 S.E.2d 782 (1992), relied upon by the majority, is readily distinguishable. The defendants in *Fleming* were on foot the entire time and merely "chose to walk in a direction which led away from the group of officers." *Id.* at 170-71, 415 S.E.2d at 785. Here, defendant was driving late at night with his headlights off in a parking lot behind and next to closed business premises. Under the requisite "totality of the circumstances" test, the circumstances here created a reasonable suspicion of criminal activity and sufficient justification for a brief investigatory stop. *See United States v. Kreimes*, 649 F.2d 1185 (5th Cir. 1981) (upon issuance of bulletin describing a plane which had landed nearby, post-midnight seizure of truck travelling with headlights off on a rural road was based on reasonable suspicion; no description of any vehicle was given in the bulletin); *State v. Fox*, 58 N.C. App. 692, 695, 294 S.E.2d 410, 412-13 (1982), *aff'd*, 307 N.C. 460, 298 S.E.2d 388 (1983) (seizure of defendant who was driving slowly down a dead-end street of locked businesses at 12:50 a.m. and where the officer did not observe any traffic or equipment violations); *State v. Tillet and State v. Smith*, 50 N.C. App. 520, 274 S.E.2d 361, *appeal dismissed*, 302 N.C. 633, 280 S.E.2d 448 (1981).