STATE OF NORTH CAROLINA v. TERRENCE JEROME HAYES

No. COA07-386

(Filed 15 January 2008)

**Search and Seizure— investigatory stop—reasonable suspicion of crime—drug neighborhood, aimless walking and gun in car—not sufficient**

Defendant's motion to suppress evidence in a prosecution for possession of heroin and possession of a firearm by a felon should have been granted where heroin and a firearm were seized in searches after an investigatory stop of defendant, and the officer could not point to articulable facts giving rise to a reasonable suspicion that a crime was taking place. The officer became suspicious because defendant and his companion were walking back and forth on the sidewalk without going anyplace in particular in an area where drug-related arrests had been made, and the officer saw a gun under the seat of the car defendant and his companion had recently left. Defendant's later resistance and flight cannot be used as retroactive justification for the stop.

Appeal by defendant from judgments entered 18 October 2006 by Judge J. B. Allen in Wake County Superior Court. Heard in the Court of Appeals 17 October 2007.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Marc Bernstein, for the State.*

*Jeffrey Evan Noecker for defendant-appellant.*

HUNTER, Judge.

Terrence Jerome Hayes ("defendant") appeals from judgments entered on 18 October 2006 pursuant to a jury verdict finding him guilty of possession of a firearm by a convicted felon and possession of heroin. After careful review, we reverse.

I.

Officer Richard Wigger of the Raleigh Police Department was on patrol in the early afternoon of 15 June 2005 in North Raleigh in an area he testified was known by him and other officers to have been the site of several previous drug-related arrests. At 1:45 p.m., Officer Wigger passed a red car with two occupants traveling

past him in the opposite direction. The two occupants were defendant, who was driving, and another man; the officer knew neither the car nor the occupants.

Officer Wigger turned his car around, traveled back down the street for ten or fifteen seconds, and found the car parked and empty, with defendant and the other passenger walking along the sidewalk nearby. Officer Wigger remained in his car watching them and testified that the pair continued to walk up and down the sidewalk about twenty or thirty yards from the car. They did not meet or interact with anyone.

When the pair walked about 150 yards down the sidewalk, Officer Wigger exited his patrol car and approached the Oldsmobile. When he reached the car, he looked through the car window and saw the handle of a pistol sticking out from under the passenger seat. He then called for back-up, got back into his car, and drove down the street toward the two men, who were still walking on the sidewalk.

Upon reaching them, the officer exited his patrol car with his weapon drawn and ordered the two men to lie down on the ground. Officer Wigger testified that defendant was not getting onto the ground and had his hands in his pockets. Another officer, Sergeant Lynch, arrived on the scene at that time. Officer Wigger then approached defendant and began forcing him to the ground using "soft hand" techniques, which he testified meant physically moving a person without punching or striking him. At that point, defendant pulled away from Officer Wigger and led Sergeant Lynch on a short chase; after fifty to seventy-five yards, Sergeant Lynch sprayed defendant with pepper spray, which ended the chase.

When defendant pulled away from Officer Wigger, defendant's jacket came off in the officer's hands. The officer searched it and found in the pocket a small bag of heroin. Upon searching the Oldsmobile, the officers found two handguns under the front passenger seat.

Defendant filed a pre-trial motion to suppress the evidence obtained during this stop—specifically, the package of heroin and two firearms that were found during the search of the car. That motion was denied. Defendant renewed this motion at trial and the motion was again denied. He was found guilty of charges of possession of a firearm by a convicted felon and sentenced to twenty-eight to thirty-four months' imprisonment, and possession of heroin and sentenced to eight to ten months' imprisonment. Defendant now appeals.

## II.

Defendant first argues that his motion to suppress the evidence obtained from the stop should have been granted. We agree.

Our review of the denial of a motion to suppress evidence "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

Both parties agree that an investigatory stop occurred when Officer Wigger emerged from the car with his weapon drawn and ordered defendant onto the ground. As our Supreme Court has noted many times, our courts recognize "the right of a law enforcement officer to detain a person for investigation of a crime without probable cause to arrest him if the officer can point to specific and articulable facts, which with inferences from those facts create a reasonable suspicion that the person has committed a crime[]"; however, "[a]ny investigation that results must be reasonable in light of the surrounding circumstances." *State v. Lovin*, 339 N.C. 695, 703-04, 454 S.E.2d 229, 234 (1995); *see also State v. Jackson*, 302 N.C. 101, 105, 273 S.E.2d 666, 670 (1981) (" '[t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and *allow a crime to occur or a criminal to escape*' ") (emphasis added; quoting *Adams v. Williams*, 407 U.S. 143, 145, 32 L. Ed. 2d 612, 616-17 (1972)); *State v. Fletcher*, 348 N.C. 292, 302, 500 S.E.2d 668, 674 (1998).

Officer Wigger testified that, while sitting in his patrol car watching defendant and his companion walk back and forth on the sidewalk, he became "suspicious of their actions at that point because they were not going anywhere in particular." The only additional facts to which the State can point to bolster this suspicion as reasonable are these: Defendant and his companion were in an area where drug-related arrests had been made in the past; the men were walking back and forth on the sidewalk of a residential neighborhood on a Sunday afternoon; the officer did not believe either man lived in the neighborhood; and the officer observed in the car defendant and his companion had recently exited a gun under the seat not of defendant, but of his companion.

These facts are very similar to those in *State v. Fleming*, 106 N.C. App. 165, 415 S.E.2d 782 (1992), where an officer stopped and

searched the defendant and another man because they were unfamiliar to him, the area was known to the officer to be a " 'high drug area,' " it was midnight, and the two men walked away from the officer upon seeing him forty feet away. *Id.* at 168, 415 S.E.2d at 784. This Court held that "a generalized suspicion that the defendant was engaged in criminal activity, based upon the time, place, and the officer's knowledge that defendant was unfamiliar to the area" was not a reasonable suspicion that could support the seizure of a defendant. *Id.* at 171, 415 S.E.2d at 785.

In the case at hand, as in *Fleming*, it is clear that the officer could not point to articulable facts giving rise to a reasonable suspicion that a crime was taking place. Indeed, Officer Wigger testified that, even after the entire altercation took place—defendant attempting to flee and being caught—he was still only planning to arrest defendant for resisting arrest. While it turned out that defendant was a felon and thus not allowed to possess a firearm, the officer testified that he did not know either man and thus had no reason to believe that the possession of a gun in the car was a crime.

Later actions—defendant's flight in particular—would likely have independently been enough to create that reasonable suspicion were the initial confrontation legitimate. However, "[d]ecisions of this Court [have] recognize[d] the right to resist illegal conduct of an officer." *State v. Sparrow*, 276 N.C. 499, 512, 173 S.E.2d 897, 905 (1970); *see also State v. Mobley*, 240 N.C. 476, 478, 83 S.E.2d 100, 102 (1954) ("[i]t is axiomatic that every person has the right to resist an unlawful arrest"); *State v. McGowan*, 243 N.C. 431, 434, 90 S.E.2d 703, 705 (1956) (holding that defendant had a "legal right to resist" arrest when officers were without authority to arrest him). As such, defendant's resistance and flight cannot be used as retroactive justification for the stop.

Because the officer could supply no facts to support a reasonable suspicion that crime was afoot, we reverse the trial court's motion to suppress all evidence obtained from the stop and subsequent searches, including the heroin and firearms.

Defendant also argues that the trial court committed plain error in failing to sever the possession of a firearm by a felon charge from the possession of heroin charge and allowing the prosecutor to disclose to the jury the nature of defendant's felony conviction. Because we reverse on the above argument and remand for new trial, we do not address this argument.

IN RE A.V.

[188 N.C. App. 317 (2008)]

III.

Because defendant's motion to suppress the evidence from the stop should have been granted, we reverse the trial court's ruling on the motion.

Reversed.

Judges McGEE and BRYANT concur.