DILLON, Judge,
dissenting.
I agree with the majority that the trial court’s Finding of Fact 5— the only finding challenged by Defendant—is not supported by the evidence of record. However, because I believe that the remaining findings are sufficient to support the court’s conclusion that Officer Brown possessed the reasonable suspicion requisite to justify an investigatory stop under the circumstances, I respectfully dissent.
As the majority points out, we have held that “the presence of an individual on a comer specifically known for drug activity and the scene of multiple recent arrests for drags, coupled with evasive actions by *91 [a] defendant^] are sufficient to form reasonable suspicion to stop an individual.” State v. Watson, 119 N.C. App. 395, 398, 458 S.E.2d 519, 522 (1995). Defendant does not dispute the trial court’s findings that Officer Brown was aware that Kim’s Mart—where the stop in question occurred —was a high-crime area, where numerous drug transactions had taken place and where Officer Brown had made a number of drug-related arrests. The sole issue, therefore, is whether the trial court’s remaining findings are sufficient to establish that Defendant engaged in “evasive actions” sufficient to give rise to reasonable suspicion.
This court has held, as the majority points out, that an individual’s action in merely walking away from one’s companion cannot be considered evasive action sufficient to form reasonable suspicion. State v. Fleming, 106 N.C. App. 165, 171, 415 S.E.2d 782, 785 (1992). However, as the majority also points out, our Supreme Court has held that there is reasonable suspicion to justify an’ investigatory stop where an individual who walks away from his companion in a high-crime area does so “after making eye contact” with a police officer. State v. Butler, 331 N.C. 227, 234, 415 S.E.2d 719, 723 (1992) (emphasis added).
I believe that Defendant’s actions here were more evasive than those of the defendant in Butler, and, accordingly, I believe that we are compelled to conclude that Officer Brown conducted a valid stop under the circumstances. Unlike Fleming, where the defendant simply walked away from the police, here Defendant engaged in a sequence of suspicious behaviors upon observing Officer Brown’s patrol car. For instance, the trial court found that “Defendant. . . and [his companion] upon spotting Officer Brown in his marked patrol car stopped talking and dispersed [from the front of Kim’s Mart].” (Emphasis added.) This unchallenged finding is comparable to the key finding in Butler that the defendant “upon making eye contact with the uniformed officers . . . moved away.” Butler, 331 N.C. at 233, 415 S.E.2d at 722. Additionally, the trial court found that Officer Brown continued driving past Kim’s Mart and lost sight of Defendant and his companion before executing a U-turn and driving back toward Kim’s Mart, where he observed Defendant and his companion once again standing together. Finally, the trial court found that when Officer Brown pulled into the Kim’s Mart parking lot, Defendant and his companion again dispersed.
Any one of Defendant’s actions, standing alone, might not satisfy the requirements of the Fourth Amendment to conduct a Terry stop. However, I believe that Defendant’s actions, when considered in their totality, namely: (1) that Defendant and his companion split up upon spotting Officer Brown’s patrol car drive by Kim’s Mart the first time; *92 (2) that Defendant and his companion reconvened once Officer Brown was out of site; and (3) that Defendant and his companion split up a second time upon observing Officer Brown driving back towards Kim’s Mart— were certainly more evasive than the actions of the defendant in Butler. Accordingly, I believe that Officer Brown conducted a valid investigatory stop of Defendant in the present case, and I would affirm the trial court on this basis.