647 S.E.2d 129 (2007)
In the Matter of I.R.T., a Juvenile.
No. COA06-676.
Court of Appeals of North Carolina.
July 17, 2007.
Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Kathleen M. Waylett and Assistant Attorney General Jay L. Osborne, for the State.
Terry F. Rose, Smithfield, for juvenile-appellant.
HUNTER, Judge.
I.R.T. ("juvenile") appeals from an order adjudicating him delinquent for possessing crack-cocaine with the intent to sell or distribute. After careful consideration, we remand for disposition based on an adjudication finding juvenile responsible for simple possession.
On the afternoon of 19 May 2005, Durham Police Officers S.E. Kershaw ("Corporal Kershaw") and J.L. Honeycutt ("Officer Honeycutt") were on patrol along Beaman Street when they observed a group of individuals standing outside an apartment building. The officers exited their vehicles and walked up to the group, engaging the group members in conversation. Corporal Kershaw testified that officers have previously arrested people on drug charges in the area, but stated that on 19 May police had not received any reports of drug sales nearby.
Corporal Kershaw testified that he approached juvenile, that juvenile looked at him, and then quickly turned his head away. Corporal Kershaw asked juvenile if he lived in the building, and juvenile answered no. "[A]s I was talking to him, he kept his head turned away from me and I could tell that he was not moving his mouth as though he had something inside of his mouth[,]" Corporal Kershaw stated.
Corporal Kershaw explained that he had previously encountered individuals acting evasive and hiding crack-cocaine in their mouths, and those experiences made him suspect juvenile might be hiding drugs in his mouth. "By his mannerisms, by turning away, by not opening his mouth as he talked, you could tell that he had something in his mouth that he was trying to hide[,]" Corporal Kershaw stated.
Suspecting juvenile of hiding drugs in his mouth, Corporal Kershaw requested juvenile to spit out what was in his mouth. Juvenile then spit out one crack-cocaine rock wrapped in cellophane. Corporal Kershaw then placed juvenile under arrest for possession of cocaine with the intent to sell or deliver. A search of juvenile's person turned up $271.00 in cash.
Following a bench trial in Durham County District Court, Judge James T. Hill entered an order adjudicating juvenile delinquent for possession of cocaine with the intent to sell or deliver. He placed juvenile on probation for a period of twelve months and required juvenile to complete a substance abuse assessment *133 and a mental health assessment, as well as 200 hours of community service. The order further provided that the juvenile would maintain passing grades in at least four courses during each grading period, and refrain from associating with anyone in the Blood gang. From this order, juvenile appeals.

I.
Juvenile first argues that the trial court erred by determining that juvenile was competent to stand trial. N.C. Gen.Stat. § 15A-1001(a) (2005) states in relevant part:
No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner. This condition is hereinafter referred to as "incapacity to proceed."
Id. "The question of defendant's capacity is within the trial judge's discretion and his determination thereof, if supported by the evidence, is conclusive on appeal." State v. Reid, 38 N.C.App. 547, 548-49, 248 S.E.2d 390, 391 (1978).
In the case sub judice, the trial court considered the opinions of two psychologists who testified and submitted reports giving conflicting opinions. Dr. David Vande Vusse ("Dr. Vande Vusse") submitted a forensic screening evaluation stating that, "Though legal terms and procedures will need to be explained to [juvenile] in concrete terms, [juvenile] does not demonstrate any mental defect that would preclude his capacity to proceed to trial."
Dr. Timothy Hancock ("Dr. Hancock") offered a different opinion, stating in his report that juvenile was not competent to stand trial. Dr. Hancock based his opinion on juvenile's evaluations showing a progressive decline in intellectual abilities. "While it is possible that he may be educated about the concrete facts of the courtroom, just as would a young child . . . [t]he preponderance of the evidence indicates that [juvenile] is not competent to stand trial."
Following the competency hearing, the trial court entered an order on 19 January 2006 finding juvenile competent to stand trial. The order cited the evidence offered by both psychologists and cited Dr. Vande Vusse's evaluation in support of its findings. Specifically, the court found that juvenile is able to assist in his own defense and work with his attorney; that juvenile does not demonstrate symptoms of any mental disorder that could interfere with his ability to participate in court proceedings; and that juvenile has the ability to understand legal terms and procedures that are explained in concrete terms.
As the court's findings were based on testimony and evaluations submitted by experts, those findings were supported by competent evidence. We determine the trial court did not abuse its discretion in concluding, upon those findings, that juvenile was competent to stand trial. This assignment of error is overruled.

II.
Juvenile next argues that the trial court erred in denying his motion to suppress evidence of crack-cocaine found on his person. We disagree.
The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. A consensual encounter with the police in a public place is neither a search nor a seizure. See State v. Streeter, 283 N.C. 203, 208, 195 S.E.2d 502, 506 (1973) (citing United States v. Hill, 340 F.Supp. 344, 347 (E.D.Pa. 1972)). Accordingly, the Constitution does not "prevent[ ] a policeman from addressing questions to anyone on the streets." Id. (citing Terry v. Ohio, 392 U.S. 1, 34, 88 S.Ct. 1868, 20 L.Ed.2d 889, 913 (1968) (White, J., concurring)). When an encounter with the police develops into a "seizure" (or "stop")[1], *134 however, the constitutional protections of the Fourth Amendment are implicated. United States v. Mendenhall, 446 U.S. 544, 553-54, 100 S.Ct. 1870, 64 L.Ed.2d 497, 508-09 (1980).
A person will be "`seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509 (footnote omitted). Factors relevant to whether a seizure has occurred  that is, whether a reasonable person would not feel free to leave  include: (1) "the threatening presence of several officers," (2) "the display of a weapon by an officer," (3) "some physical touching of the person of the citizen,"[2] or (4) "the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id. (citations omitted).
There has not been an explicit holding by the courts of this state as to whether the age of a defendant or juvenile is a relevant inquiry in determining whether a reasonable person would feel free to leave. See State v. Freeman, 307 N.C. 357, 363, 298 S.E.2d 331, 334 (1983) (considering that the defendant was seventeen years old and the police officer was fifty years old in determining whether a reasonable person would feel free to leave) cf. State v. Christie, 96 N.C.App. 178, 184, 385 S.E.2d 181, 184 (1989) ("[t]he Mendenhall standard of whether a reasonable person would have believed that he was not free to leave is an objective standard, not subjective"). A defendant's age has been used to determine whether he was in custody, but the test to determine custody is not identical to the test to determine whether a seizure has occurred. State v. Buchanan, 353 N.C. 332, 339, 543 S.E.2d 823, 828 (2001). That said, we see no legal or common sense reason to make a distinction. Thus, we hold that the age of a juvenile is a relevant factor in determining whether a seizure has occurred within the meaning of the Fourth Amendment.
"Our review of a trial court's denial of a motion to suppress is limited to a determination of whether its findings are supported by competent evidence, and if so, whether the findings support the trial court's conclusions of law." State v. McRae, 154 N.C.App. 624, 627-28, 573 S.E.2d 214, 217 (2002). In the instant case, the officer "requested" that juvenile spit out what was in his mouth. However, the trial court made no finding as to consent. Accordingly, we are unable to determine whether this seizure was consensual. See id. at 630, 573 S.E.2d 214, 573 S.E.2d at 219 (the defendant's acquiescence to an officer's request to remove an item from his pocket amounted to clear and unequivocal consent for the seizure).
Although there is no case on point, we believe a seizure occurred under the facts of this case. First, there were two officers present, both of whom arrived in marked police cars. Second, the guns they were carrying were visible. Third, the officers had a gang unit emblem on their shirt. Fourth, juvenile was fifteen years old at the time of the alleged offense. Given this show of authority, the officer's "request" could have been construed by a reasonable person of juvenile's age as an order, compliance with which was mandatory. Under these circumstances, we do not believe that a reasonable person would feel free to leave. Having determined that juvenile was seized, we must now address whether that seizure was constitutional.

III.
In order for a seizure to pass constitutional muster, the officer must have reasonable suspicion to believe criminal activity was afoot. State v. Roberts, 142 N.C.App. 424, 429, 542 S.E.2d 703, 707 (2001). Factors relevant in determining whether a police officer had reasonable suspicion include: (1) nervousness *135 of an individual (State v. McClendon, 350 N.C. 630, 639, 517 S.E.2d 128, 134 (1999)); (2) presence in a high crime area (Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570, 576 (2000)); and (3) unprovoked flight (Id. at 125, 120 S.Ct. at 676-77, 145 L.Ed.2d at 577). "None of these factors, standing alone, are sufficient to justify a finding of reasonable suspicion, but must be considered in context." Roberts, 142 N.C.App. at 429, 542 S.E.2d at 707-08. Additionally, refusal to cooperate, "`"without more, does not furnish the minimal level of objective justification needed for a detention or seizure."'" Id. at 429, n. 1, 542 S.E.2d at 707, n. 1 (citations omitted). Also, "[t]he facts known to the officers at the time of the stop [or seizure] `must be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by experience and training.'" State v. McDaniels, 103 N.C.App. 175, 180, 405 S.E.2d 358, 361 (1991) (quoting State v. Harrell, 67 N.C.App. 57, 61, 312 S.E.2d 230, 234 (1984)). In short, an officer's belief that criminal activity may be afoot must be based on objective, articulable facts. See, e.g., Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357, 362 (1979).
In the instant case, the trial court concluded that the police had reasonable suspicion because he was located in a high crime area, the police had received complaints that drug dealing had been occurring in the area, and the way juvenile conducted himself. We hold that the juvenile's conduct, his presence in a high crime area, and the police officer's knowledge, experience, and training are sufficient to establish reasonable suspicion.
The officer testified that there had been "drug arrests [and gang activity] in the area before," that juvenile "quickly turned his head away" from the officer, and that juvenile "kept his head turned away from [him] and . . . [the officer] could tell that he was not moving his mouth [while responding to the officer's questions] as though he had something inside of his mouth." According to the officer, "individuals that have exhibited those characteristics have generally kept crack-cocaine in their mouths."
In a similar case, this Court found reasonable suspicion when a defendant placed drugs in his mouth and took evasive action by attempting to walk into a store. State v. Watson, 119 N.C.App. 395, 398, 458 S.E.2d 519, 522 (1995) (noting that this sort of behavior would lead a reasonable officer to believe that the defendant was attempting to hide contraband).[3] Similarly, in this case juvenile's turning away from the officer and not opening his mouth while speaking constituted evasive actions. Finally, "[o]ur Supreme Court has . . . noted that the presence of an individual on a corner specifically known for drug activity and the scene of multiple recent arrests for drugs, coupled with evasive actions by defendant are sufficient to form reasonable suspicion to stop [or seize] an individual." Id. (citing State v. Butler, 331 N.C. 227, 415 S.E.2d 719 (1992)). Such is the case here, and we find that the officers in this case had reasonable suspicion to justify an investigatory seizure. This, however, does not end our inquiry on the issue of constitutionality of the search. We must next address whether the warrantless search was constitutional.

IV.
Having determined that there was reasonable suspicion to make an investigatory seizure, we next address whether there was probable cause to conduct the warrantless search.
So long as a stop [or seizure] is investigative, the police only need to have a reasonable suspicion [to conduct a Terry weapons frisk or "pat down"]. However, if the police conduct a full search of an individual without a warrant or consent, they must have probable cause, and there must be exigent circumstances.
State v. Pittman, 111 N.C.App. 808, 812, 433 S.E.2d 822, 824 (1993) (citing State v. Mills, 104 N.C.App. 724, 730, 411 S.E.2d 193, 196 (1991)); see also Florida v. Royer, 460 U.S. *136 491, 499, 103 S.Ct. 1319, 75 L.Ed.2d 229, 237 (1983) ("[d]etentions may be `investigative' yet violative of the Fourth Amendment absent probable cause. In the name of investigating a person who is no more than suspected of criminal activity, the police may not carry out a full search of the person or of his automobile or other effects. Nor may the police seek to verify their suspicions by means that approach the conditions of arrest").
Although this Court in Watson did not address whether there was probable cause to conduct a full search of a defendant, it did find probable cause to arrest the defendant on the same grounds on which it found reasonable suspicion to make the investigatory seizure. Watson, 119 N.C.App. at 400, 458 S.E.2d at 523. Thus, in this case, we find probable cause based on the same factors in which we found reasonable suspicion to conduct the investigatory seizure. The exigent circumstances are also apparent in this case: Juvenile had drugs in his mouth and could have swallowed them, destroying the evidence or harming himself. See State v. Smith, 118 N.C.App. 106, 115, 454 S.E.2d 680, 686, reversed on other grounds, 342 N.C. 407, 464 S.E.2d 45 (1995) (noting that "courts have allowed highly intrusive warrantless searches of individuals where exigent circumstances are shown to exist, such as imminent loss of evidence or potential health risk to the individual").
The dissent's reliance on State v. Fleming is misplaced. In that case, this Court held that the officer "had only a generalized suspicion that the defendant was engaged in criminal activity" because the defendant was merely in a high crime area. Fleming, 106 N.C.App. at 171, 415 S.E.2d at 785. It is well settled that presence "`in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that [defendant] himself was engaged in criminal conduct.'" Id. at 170, 415 S.E.2d at 785 (quoting Brown, 443 U.S. at 52, 99 S.Ct. at 2641, 61 L.Ed.2d at 362-63). The defendant in Fleming merely walked away from the officers which, without more, such as evasive maneuvers, is insufficient to establish reasonable suspicion. Id. Such is not the case here. Juvenile in this case appeared to have something in his mouth. Based on the officer's training and experience, he knew this was a common method in which people hide drugs. Unlike Fleming, the fact that juvenile in this case was in a high crime area was only one factor the officer used to form reasonable suspicion and probable cause that criminal activity was afoot. Thus, we find Fleming distinguishable from the case at bar and would uphold the trial court's ruling denying the motion to suppress the evidence. Having determined that the evidence was properly admitted we now turn to the question of whether the evidence presented was sufficient to justify an adjudication of possession with intent to sell or distribute.

V.
Juvenile next argues that the trial court erred in denying his motion to dismiss the charge of possession with intent to sell or distribute. We agree.
In reviewing the denial of a motion to dismiss for insufficient evidence, we determine whether, in the light most favorable to the State, there was substantial evidence supporting each element of the charged offense. In re Bass, 77 N.C.App. 110, 115, 334 S.E.2d 779, 782 (1985). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Brown, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citing State v. Smith, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980)). Here, the issue is whether there was substantial evidence to support the element of intent to sell or distribute crack-cocaine.
The offense of possession with intent to sell or deliver has three elements: (1) possession of a substance; (2) the substance must be a controlled substance; and (3) there must be intent to sell or distribute the controlled substance. N.C. Gen.Stat. § 90-95(a)(1); State v. Fletcher, 92 N.C.App. 50, 55, 373 S.E.2d 681, 685 (1988). While intent may be shown by direct evidence, it is often proven by circumstantial evidence from which it may be inferred. State v. Jackson, 145 N.C.App. 86, 90, 550 S.E.2d 225, 229 (2001). Although *137 "quantity of the controlled substance alone may suffice to support the inference of an intent to transfer, sell, or deliver," it must be a substantial amount. State v. Morgan, 329 N.C. 654, 659-60, 406 S.E.2d 833, 835-36 (1991).
State v. Nettles, 170 N.C.App. 100, 105, 612 S.E.2d 172, 175-76 (2005). "Based on North Carolina case law, the intent to sell or distribute may be inferred from (1) the packaging, labeling, and storage of the controlled substance, (2) the defendant's activities, (3) the quantity found, and (4) the presence of cash or drug paraphernalia." Id. at 106, 612 S.E.2d at 176 (citing State v. Carr, 122 N.C.App. 369, 373, 470 S.E.2d 70, 73 (1996)).
Here, the evidence showed a single rock of crack cocaine wrapped in cellophane, as well as $271.00 in cash on juvenile's person. The State argues that the cellophane packaging plus the presence of unexplained cash are sufficient to satisfy the intent to sell or distribute element. We disagree.
The State is correct in pointing out that packaging and unexplained cash are appropriate factors to consider in determining whether there is sufficient evidence on the intent element. However, we conclude that here the evidence, viewed cumulatively, was insufficient. The single crack rock does nothing to advance the intent element since possession of one rock, with nothing more, could only be possession of crack cocaine. The cellophane wrapper also does nothing to demonstrate intent. Cellophane may frequently be used to package street drugs, but under the facts in this case, the cellophane could just as easily be in his possession in his role as a consumer who purchased the packaged crack rock from a dealer. Cases in which packaging has been a factor have tended to involve drugs divided into smaller quantities and packaged separately.
The issue of the unexplained $271.00 in cash on juvenile's person is a factor to consider. However, unexplained cash is only one factor that can help support the intent element. We are not convinced the amount of cash found here, given the totality of the circumstances, is enough to establish intent. We have previously determined that a large quantity of contraband, alone, is insufficient to establish an inference that its possessor intended to sell or deliver it. In State v. Wiggins, 33 N.C.App. 291, 235 S.E.2d 265, cert. denied, 293 N.C. 592, 241 S.E.2d 513 (1977), we rejected the argument that 215.5 grams of marijuana alone is sufficient to infer intent. Id. at 294-95, 235 S.E.2d at 268. As with a large quantity of drugs, we determine that the presence of cash, alone, is insufficient to infer an intent to sell or distribute.
The charge of simple possession, however, is a lesser included offense of possession with intent to sell or distribute. State v. Turner, 168 N.C.App. 152, 159, 607 S.E.2d 19, 24 (2005). "`When [the trier of fact] finds the facts necessary to constitute one offense, it also inescapably finds the facts necessary to constitute all lesser-included offenses of that offense.'" Id. (quoting State v. Squires, 357 N.C. 529, 536, 591 S.E.2d 837, 842 (2003), cert. denied, 541 U.S. 1088, 124 S.Ct. 2818, 159 L.Ed.2d 252 (2004)). Thus, in this case, when the trier of fact adjudicated juvenile responsible for possession with intent to sell or deliver, it necessarily found juvenile responsible for simple possession of a controlled substance. Id. Accordingly, we remand for disposition based on an adjudication finding juvenile responsible for simple possession which was supported by substantial evidence. See State v. Gooch, 307 N.C. 253, 258, 297 S.E.2d 599, 602 (1982) (vacating the sentence imposed upon the verdict of guilty of possession of more than one ounce of marijuana and remanding for resentencing "as upon a verdict of guilty of simple possession of marijuana," a lesser included offense).

VI.
In summary, we uphold the trial court's ruling regarding the admission of evidence but remand for disposition based on an adjudication finding juvenile responsible for simple possession.
No error in part; remanded in part.
Judge JACKSON concurs in a separate opinion.
Judge CALABRIA concurs in part and dissents in part in a separate opinion.
*138 JACKSON, Judge concurs in a separate opinion.
I concur with the majority's ruling regarding the admission of evidence and remanding the case for disposition based upon an adjudication finding juvenile responsible for simple possession. I also concur with the majority's affirming the trial court's finding that the juvenile is competent to stand trial; however, I write in a separate opinion to express my concerns with this decision.
Although the determination of whether or not a defendant is competent to stand trial is one that lies within the discretion of the trial court, I am troubled by the particular circumstances found in the instant case. In the juvenile's case, he was subjected to two competency evaluations by two different psychologists, both resulting in conflicting determinations.
The first competency evaluation, done on 23 September 2005 by Dr. VandeVusse, a psychologist, concluded that although the juvenile has significant intellectual limitations that affect his verbal skills, his limitations do not lead to a diagnosis of mental retardation or of a learning disability. Dr. VandeVusse assessed the juvenile by conducting a clinical interview and observing the juvenile's behaviors. He also reviewed all of the court documents, interviewed the juvenile's mother, and reviewed his previous evaluation of the juvenile conducted a year and a half prior. Dr. VandeVusse stated in his evaluation that although the juvenile would need to have legal terms and procedures explained to him in concrete terms, "he does not demonstrate any mental defect that would preclude his capacity to proceed to trial." In Dr. VandeVusse's previous evaluation performed 3 March 1989, he stated that the juvenile's overall IQ score was within the borderline range of intellectual functioning, however his verbal IQ score was found to be in the mildly mentally retarded range. Despite this, Dr. VandeVusse previously had found that the juvenile was "able to discuss the charges against him and appeared to appreciate the consequences of the possible outcomes of the legal proceedings against him."
The second competency evaluation was conducted by Dr. Hancock, licensed clinical psychologist, within weeks of Dr. VandeVusse's second evaluation. In assessing the juvenile, Dr. Hancock conducted several tests, including the Test of Memory Malingering, the Instruments for Assessing Understanding and Appreciation of Miranda Rights, and the Evaluation of Competency to Stand Trial  Revised. Dr. Hancock also reviewed the juvenile's school records, the Durham Police Department Offense Record for the instant offense, prior competency evaluations by two other doctors including Dr. VandeVusse, he interviewed the juvenile's mother, and reviewed the motion for competency examination signed by the juvenile's attorney. Based upon his evaluation, Dr. Hancock reached a very different conclusion than Dr. VandeVusse. Dr. Hancock found that the juvenile's "language deficits contribute to an overall condition of significant impairment in verbal IQ that impacts his competence." Dr. Hancock found the juvenile's verbal IQ to be within the mentally retarded range, and that this, coupled with the results of the competency test performed, "indicate significant impairment in his factual and rational understanding of the legal system." Dr. Hancock found that the juvenile had a very limited understanding of the legal system, and did not have a clear understanding even of who the participants in the court system  including the jury  were. Based upon his review, Dr. Hancock concluded that the juvenile was not competent to stand trial.
While I am troubled by the fact that one evaluator conducted such extensive and relevant competency testing that the other did not, I recognize that the facts of this case cause it to be a difficult determination for the trial court. Thus, given that our standard of review is that of an abuse of discretion, this Court has no choice but to hold that the trial court did not abuse its discretion in finding the juvenile competent to stand trial. The trial court's determination was properly supported by the Dr. VandeVusse's evaluation, and thus the decision was a proper one.
CALABRIA, Judge, concurring in part and dissenting in part.
I concur with the majority that the juvenile was competent to stand trial and that the *139 court erred in denying defendant's motion to dismiss since there was insufficient evidence to find defendant guilty of possession of crack cocaine with intent to sell or deliver.
However, I respectfully dissent from the majority's determination that the search and seizure of the defendant was justified because I believe the officers had neither reasonable, articulable suspicion to detain the defendant, nor the probable cause and exigent circumstances required to search him. The majority determines that the defendant was seized by the officers' show of force, but concludes that such a seizure was justified. I disagree. The majority opinion bases its conclusion on three factors: defendant's presence in a high-crime area, his reluctance to speak with the police, and the presence in his mouth of some unknown object. The majority determines that these factors simultaneously provided Officer Kershaw with reasonable, articulable suspicion, probable cause, and exigent circumstances justifying a search of defendant's person. Assuming, arguendo, that these factors justify a brief investigatory seizure, they certainly do not rise to the level of probable cause.
"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527, 552 (1983). "Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty." State v. Streeter, 283 N.C. 203, 207, 195 S.E.2d 502, 505 (1973) (citation omitted). "The probable cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769, 775 (2003).
"The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct." Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357, 362-63 (1979). Under Brown, the defendant's presence in an area characterized by law enforcement as "high crime" does not alone justify his seizure.
The majority notes Officer Kershaw's statement that there had previously been drug arrests in the area to support its determination that the officer had reasonable grounds to seize the defendant. However, as the majority notes, police had received no calls concerning drug activity in the area where defendant was seized. The relevant exchange was as follows:
[Defense counsel] So you would say that was a drug area?
[Officer Kershaw] We've made drug arrests in the area before, yes.
[Defense counsel] But you didn't receive any calls about drugs being sold on that day?
[Officer Kershaw] Correct.
Further, Officer Kershaw testified that he had not seen defendant prior to the encounter and thus had no reason to suspect defendant might use or deal with illegal drugs.
Although an area previously known for drug arrests may be one factor to consider in determining reasonable suspicion and probable cause, our courts have indicated that when there have been no recent arrests in the area, such a factor does not carry substantial weight. State v. Butler, 331 N.C. 227, 233, 415 S.E.2d 719, 722 (1992) ("[the police officer] observed defendant not simply in a general high crime area, but on a specific corner known for drug activity and as the scene of recent, multiple drug-related arrests.") (emphasis supplied); In re J.L.B.M., 176 N.C.App. 613, 621, 627 S.E.2d 239, 244 (2006) (In determining there was no reasonable suspicion, the court stated, "Officer Henderson did not observe the juvenile committing any criminal acts, nor had there been other reports of any criminal activity in the area that day.").
Since there was no evidence of any recent drug activity in the area in question, this fact adds little support to the majority's assertion that the officer had probable cause to search defendant, especially given the fact that Officer Kershaw testified that no drug activity *140 was reported on the date in question. Officers were not responding to any reports of drug activity and had no specific reason to suspect that any illegal activity may be afoot. While a neighborhood's character as a high-crime area may be a factor in determining the existence of reasonable suspicion or probable cause, I find such a factor has little weight when, as here, there is no indication of recent drug activity.
The majority also relies on the fact that defendant turned his head and seemed reluctant to engage in conversation with Officer Kershaw. However, this fact is indicative of nothing more than a desire on the part of defendant to avoid speaking with police. Unless defendant was seized prior to Officer Kershaw questioning him, he was free to disengage from the encounter with Officer Kershaw. See generally State v. Corbett, 339 N.C. 313, 326, 451 S.E.2d 252, 258 (1994). If defendant was seized at the point Officer Kershaw questioned him, his seizure could not have been based on any other factor besides his presence in a high-crime area. Such a seizure would clearly violate defendant's Fourth Amendment rights as articulated in Brown. Accordingly, any evidence discovered from such a seizure would be fruit of the poisonous tree and subject to suppression. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Thus, defendant had a legal right to turn away from the officer, or alternatively, was illegally seized at that moment.
Lastly, the majority relies on the fact that defendant appeared to have some unknown object in his mouth. Despite the majority's assertion to the contrary, the fact that defendant appeared to have something in his mouth cannot provide probable cause, as the object very well could have been gum, a piece of candy, or a breath mint. Officer Kershaw himself admitted that the item could have been any number of things besides contraband.
[Defense counsel] You couldn't tell what was in his mouth[?]
[Officer Kershaw] Not at that time, no.
[Defense counsel] You didn't know if it was a piece of gum[?]
[Officer Kershaw] Correct.
[Defense counsel] You didn't know if it was a piece of hard candy[?]
[Officer Kershaw] Correct.
[Defense counsel] You didn't know if it was just the way that he talks[?]
[Officer Kershaw] Possibly.
In support of its holding, the majority relies on State v. Watson, 119 N.C.App. 395, 458 S.E.2d 519 (1995), which is distinguishable from the case sub judice. In Watson, the defendant was observed in an area where officers constantly made drug arrests by an officer who knew the defendant had previously been arrested on drug charges. Upon seeing the officer, the defendant hurriedly placed something in his mouth, began walking away from the officer, and attempted to take a drink of a beverage. Based on the totality of the circumstances, this Court determined the officer's demand was reasonable when he ordered defendant to spit out the contents of his mouth.
The majority misstates Watson's scope and ignores crucial distinctions between Watson and the instant case. In Watson, the officer was able to form a more particularized suspicion than the officer in this case, given the fact that the defendant, a known drug user in a specific location notorious for drug sales, was observed hurriedly placing something into his mouth and then trying to swallow the object by taking a drink of a beverage when he saw the police approaching. In this case, there is no evidence that defendant was a known drug user, and no evidence that he hurriedly tried to place any item in his mouth as the officers approached him. Here, officers simply approached some individuals and noticed that defendant turned his head and, when he spoke, appeared to have some indeterminate object in his mouth. For the reasons stated above, these facts fall short of the probable cause standard.
I believe the facts of this case are more similar to those in State v. Fleming, 106 N.C.App. 165, 415 S.E.2d 782 (1992). In Fleming, an officer observed two individuals walking in an area where crack cocaine was regularly sold. The officer first told the individuals to "hold it a minute" and then said, "Come here." When the officer patted *141 one of them down for weapons, he felt an object and asked what it was. The defendant admitted the object was crack cocaine.
In reversing the defendant's conviction, we determined that the officer had no reasonable, articulable suspicion to seize the defendant in that the officer had no specific reason for suspecting any criminal wrongdoing. Brown is also similar to the case sub judice. In Brown, officers detained a defendant based on vague suspicions formed after seeing two individuals walk away from each other in an alley located in a high-crime area. The court noted that vague suspicions of wrongdoing are insufficient to justify a seizure. I believe this case is more in line with Fleming and Brown, and disagree with the majority's determination that Officer Kershaw had grounds to stop and search defendant.
The totality of the circumstances in this case can be summarized as such: an officer observed an unfamiliar individual who was not a known drug user or a criminal on a day in which no drug activity had been reported in the area and who seemed reluctant to speak with police and appeared to have some unknown object in his mouth. These facts, taken together, in no way permit a conclusion that Officer Kershaw had probable cause to search defendant's person.
To hold otherwise would allow police to search any individual located in an area where past crimes have occurred who exhibits a desire to be left alone and either has something in his mouth or speaks with a speech impediment. Such a holding eviscerates the protections of the Fourth Amendment and lowers the probable cause standard to allow police to conduct intrusive searches of residents of neighborhoods plagued by crime on the barest of suspicions. Because I believe there was no probable cause justifying the search, I see no need to address the majority's assertion that exigent circumstances existed. As the majority recognizes, a warrantless search of the person requires both probable cause and exigent circumstances. State v. Pittman, 111 N.C.App. 808, 812, 433 S.E.2d 822, 824 (1993).
In conclusion, I dissent from the majority's determination that Officer Kershaw had grounds to stop and search defendant. However, I concur with the majority's determination that defendant was competent to stand trial and that there was insufficient evidence that defendant intended to sell or deliver crack cocaine. For the foregoing reasons, I would remand this case to the trial court for a new trial with evidence gathered from the illegal search and seizure suppressed.
NOTES
[1] The term "seizure" is often used in multiple contexts. In this case, we use the term to refer to the situation where a person is seized, that is, stopped, within the meaning of the Fourth Amendment.
[2] The application of actual physical force to the person results in a seizure. State v. Fleming, 106 N.C.App. 165, 169, 415 S.E.2d 782, 784 (1992) (citing California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). There is no evidence in this case that there was any physical contact between the officers and juvenile.
[3] We note without relying on State v. Scott, 178 N.C.App. 393, 631 S.E.2d 237 (2006) (unpublished) (finding reasonable suspicion where an officer observed defendant chewing and attempting to swallow items in his mouth while located in a high crime area and upholding the officer's request for defendant to "spit out" what was in his mouth).