IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA14-1359

 Filed: 4 August 2015

Johnston County, No. 13 CRS 053875

STATE OF NORTH CAROLINA

 v.

CHARLES DIONE WARREN, Defendant.

 Appeal by Defendant from judgment entered 3 July 2014 and order entered 3

September 2014 by Judge Richard T. Brown in Johnston County Superior Court.

Heard in the Court of Appeals 7 May 2015.

 Attorney General Roy A. Cooper III, by Special Deputy Attorney General James
 A. Wellons, for the State.

 Bryan Gates for Defendant-appellant.

 DILLON, Judge.

 Charles Dione Warren (“Defendant”) appeals from the trial court’s order

denying in part his motion to suppress and from a conviction for felony possession of

cocaine and attaining the status of habitual felon. For the following reasons, we

affirm the trial court’s order.

 I. Background

 Defendant was indicted for various drug offenses in connection with the

discovery of illegal drugs and drug paraphernalia in his car during a traffic stop and
 STATE V. WARREN

 Opinion of the Court

for attaining the status of habitual felon. Defendant filed motions to suppress certain

evidence collected during warrantless searches by the police.

 Prior to trial on the matter, the trial court conducted an evidentiary hearing

on Defendant’s motions. After the hearing, the trial court entered an order granting

Defendant’s motion to suppress information retrieved from cell phones seized from

Defendant’s car but denied his motion as to anything else seized by police.

 The case was tried before a jury, and Defendant was found guilty of felonious

possession of cocaine and possession of drug paraphernalia. Defendant pleaded guilty

to attaining the status of habitual felon. The trial court arrested judgment on the

possession of drug paraphernalia conviction and sentenced Defendant as an habitual

felon to 38 to 58 months of imprisonment for the felony possession of cocaine

conviction. Defendant gave notice of appeal in open court.

 II. Analysis

 On appeal, Defendant challenges the trial court’s partial denial of his motion

to suppress certain evidence found during a routine traffic stop. Defendant does not

contest the validity of the stop itself. Rather, Defendant contends that the court erred

in concluding that the officer had reasonable suspicion to extend the scope and length

of time of a routine traffic stop to allow a police dog to perform a drug sniff outside

his vehicle, which led to the discovery of contraband in Defendant’s vehicle.

Specifically, Defendant challenges the trial court’s conclusion “[t]hat [the officer] had

reasonable articulable suspicion to extend the scope of the initial stop and subject the

 -2-
 STATE V. WARREN

 Opinion of the Court

Defendant’s vehicle to the canine search and that the Defendant was not

unreasonably detained nor the scope of the initial stop unreasonably extended for the

purpose of that canine sniff search.”

 This Court’s review of an appeal from the denial of a defendant’s motion to

suppress is limited to determining “whether competent evidence supports the trial

court’s findings of fact and whether the findings of fact support the conclusions of

law.” State v. Biber, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011). Unchallenged

findings of fact “are deemed to be supported by competent evidence and are binding

on appeal. Conclusions of law are reviewed de novo and are subject to full review.

Under a de novo review, the court considers the matter anew and freely substitutes

its own judgment for that of the lower tribunal.” Id. at 168, 712 S.E.2d at 878 (marks

omitted).

 We believe that based on the trial court’s unchallenged findings, the officer had

reasonable suspicion to extend the routine traffic stop to perform a dog stiff; and,

accordingly, we hold that the trial court did not err in partially denying Defendant’s

motion to suppress.

 The Fourth Amendment to the United States Constitution protects the “right

of the people to be secure in their persons . . . and effects, against unreasonable

searches and seizures[.]” U.S. Const. amend. IV. “A traffic stop is a seizure even

though the purpose of the stop is limited and the resulting detention quite brief.”

State v. Barnard, 362 N.C. 244, 246, 658 S.E.2d 643, 645 (2008). “[A]n officer may

 -3-
 STATE V. WARREN

 Opinion of the Court

stop a vehicle on the basis of a reasonable, articulable suspicion that criminal activity

is afoot.” State v. Styles, 362 N.C. 412, 427, 665 S.E.2d 438, 447 (2008).

 As the United States Supreme Court recently explained, during the course of

a stop for a traffic violation, an officer may – in addition to writing out a traffic citation

- perform checks which “serve the same objective as enforcement of the traffic code[.]”

Rodriguez v. United States, ___ U.S. ___, ___, 191 L.Ed. 2d 492, 499 (2015). These

checks typically include “checking the driver’s license, determining whether there are

outstanding warrants against the driver, and inspecting the automobile’s registration

and proof of insurance.” Id. The Court further held that under the Fourth

Amendment an officer “may conduct certain unrelated checks during an otherwise

lawful traffic stop, [but] . . . he may not do so in a way that prolongs the stop, absent

the reasonable suspicion ordinarily demanded” to justify detaining an individual. Id.

The Court specifically held that the performance of a dog sniff is not a type of check

which is related to an officer’s traffic mission. Id. Therefore, under Rodriguez, an

officer who lawfully stops a vehicle for a traffic violation but who otherwise does not

have reasonable suspicion that any crime is afoot beyond a traffic violation may

execute a dog sniff only if the check does not prolong the traffic stop.

 We note that prior to Rodriguez, many jurisdictions – including North Carolina

– applied a de minimis rule, which allowed police officers to prolong a traffic stop “for

a very short period of time” to investigate for other criminal activity unrelated to the

traffic stop – for example, to execute a dog sniff – though the officer has no reasonable

 -4-
 STATE V. WARREN

 Opinion of the Court

suspicion of other criminal activity. State v. Sellars, 222 N.C. App. 245, 249-50, 730

S.E.2d 208, 211 (2012). See also State v. Brimmer, 187 N.C. App. 451, 455, 653 S.E.2d

196, 198 (2007). However, the holdings in these cases to the extent that they apply

the de minimis rule have been overruled by Rodriguez.

 In the present case, it is unclear from the trial court’s findings whether the

execution of the dog sniff prolonged the traffic stop. Specifically, the trial court found

that the officer stopped Defendant for a traffic offense; that the officer called for

backup during the stop; that the backup arrived; that the officer performed the dog

sniff while his backup completed writing out Defendant’s traffic citation; and that the

entire stop lasted less than ten minutes. What is unclear is whether the officer’s call

for backup or waiting for backup to arrive prolonged the stop beyond that which was

necessary to complete the traffic stop.

 Notwithstanding, unlike in Rodriguez, the trial court’s findings support the

conclusion that the officer had developed reasonable suspicion of illegal drug activity

during the course of his investigation of the traffic offense and was therefore justified

to prolong the traffic stop to execute the dog sniff. We note that the State does not

need to show that the officer had “probable cause” of illegal drug activity but that he

merely had “reasonable suspicion” to extend the stop. See Rodriguez v. United States,

___ U.S. at ___, 191 L.Ed. 2d at 499. And as our Supreme Court has pointed out

“[r]easonable suspicion is a less demanding standard than probable cause and

requires a showing considerably less than preponderance of the evidence. Only some

 -5-
 STATE V. WARREN

 Opinion of the Court

minimal level of objective justification is required.” Barnard, 362 N.C. at 247, 658

S.E.2d at 645 (marks omitted). In determining whether an officer had a reasonable

suspicion of criminal activity, the court must examine both the facts known to the

officer at the time he decided to approach the defendant and the rational inferences

that may be drawn from those facts. State v. Thompson, 296 N.C. 703, 706, 252

S.E.2d 776, 779 (1979). Also, “the reviewing court must take into account an officer’s

training and experience.” State v. Willis, 125 N.C. App. 537, 541, 481 S.E.2d 407, 410

(1997). In making this determination, “the court must view the totality of the

circumstances through the eyes of a reasonable and cautious police officer at the

scene.” State v. Battle, 109 N.C. App. 367, 370, 427 S.E.2d 156, 158 (1993).

 In the context of a traffic stop, a Defendant’s proximity to a high crime area

alone does not constitute reasonable suspicion; however, a defendant’s presence in

such area coupled with some sort of evasive behavior may constitute reasonable

suspicion. See, e.g., State v. Jackson, ___ N.C. ___, ___ S.E.2d ___ 2015 N.C. LEXIS

446 (N.C., June 11, 2015) (holding that officer had reasonable suspicion where the

defendant was in a high crime area and took evasive action in the presence of the

officer); State v. Willis, 125 N.C. App. 537, 542, 481 S.E.2d 407, 411 (1997) (stating

that “when an individual’s presence at a suspected drug area is coupled with evasive

action, police may form, from those actions, the quantum of reasonable suspicion

necessary to conduct an investigatory stop”).

 -6-
 STATE V. WARREN

 Opinion of the Court

 In the context of the present case, we note that this Court has held that an

officer had reasonable suspicion to detain an individual based on facts similar to those

here. Specifically, in In re I.R.T., officers approached a group of individuals, including

a juvenile, in an area known for drug activity. 184 N.C. App. 579, 581, 647 S.E.2d

129, 132 (2007). When one officer approached the juvenile, he looked at the officer

and quickly turned his head; it appeared to the officer that the juvenile had something

in his mouth. Id. The officer explained “that he had previously encountered

individuals acting evasive and hiding crack-cocaine in their mouths, and those

experiences made him suspect [the juvenile] might be hiding drugs in his mouth.” Id.

The officer detained the juvenile which eventually led to the discovery of a crack-

cocaine rock that was in the juvenile’s mouth. Id. On appeal from his adjudication

and the denial of his motion to suppress, this Court held that “the juvenile’s conduct,

his presence in a high crime area, and the police officer’s knowledge, experience, and

training [was] sufficient to establish” that the officer had a reasonable suspicion to

justify an investigatory seizure of the juvenile. Id. at 581-82, 585, 647 S.E.2d at 132-

33, 135.

 Likewise, here, in support of its conclusion that reasonable suspicion to extend

the scope of the stop, the trial court found that Defendant was observed and stopped

“in an area [the officer] knew to be a high crime/high drug activity area[;]” that while

writing the warning citation, the officer observed that Defendant “appeared to have

something in his mouth which he was not chewing and which affected his speech[;]”

 -7-
 STATE V. WARREN

 Opinion of the Court

that “during his six years of experience [the officer] who has specific training in

narcotics detection, has made numerous ‘drug stops’ and has observed individuals

attempt to hide drugs in their mouths and . . . swallow drugs to destroy evidence[;]”

and that during their conversation Defendant denied being involved in drug activity

“any longer.” We hold that based on the totality of the facts the trial court’s

unchallenged findings establish the “minimal level of objective justification” to show

that the officer had reasonable suspicion to believe that criminal activity was

occurring to justify the extension of the traffic stop.1

 Accordingly, we hold that the trial court did not err in concluding the same and

in denying Defendant’s motion to suppress.

 AFFIRMED.

 Judge GEER concurs.

 Judge ELMORE dissents in a separate opinion.

 1 The dissenting Judge argues that the officer’s reasonable suspicion to justify prolonging the
traffic stop cannot be based in this case on the officer’s observance of an object in Defendant’s mouth.
Specifically, the dissenting Judge points out that the present case differs from I.R.T. in that in the
present case the officer never asked Defendant about the object in his mouth nor asked Defendant for
consent to search his mouth. We recognize that the lack of any evidence that the officer specifically
inquired about the object makes the question of whether the officer had reasonable suspicion closer.
However, notwithstanding a lack of evidence that the officer inquired about the object in Defendant’s
mouth, we believe that Defendant’s act of speaking with the officer for a period of time without
removing or chewing on an object which was affecting his speech – when coupled with the other factors
cited above – is sufficient to establish reasonable suspicion.
 -8-
 STATE V. WARREN

 ELMORE, R., dissent

 No. COA14-1359–State v. Warren

 ELMORE, Judge, dissenting.

 I respectfully disagree with the majority’s conclusions that the trial court did

not err in denying defendant’s motion to suppress. As a result, I would reverse the

trial court’s order denying defendant’s motion to suppress, vacate the judgment, and

remand to the trial court.

 The majority concludes that the facts in defendant’s case support the trial

court’s finding that the officer had a reasonable articulable suspicion to extend the

scope of the initial stop to allow a canine search of defendant’s vehicle. I disagree.

The majority recognizes that when an individual’s presence in a suspected high crime

area is coupled with evasive action, law enforcement may form reasonable suspicion

from the evasive actions. Willis, supra. As such, the majority concludes that the

facts in In re I.R.T., are analogous to those facts in the case at hand. In re I.R.T, 184

N.C. App. 579, 581-83, 647 S.E.2d 129, 132-33 (2007). I disagree.

 In I.R.T., the officer testified that when he approached the juvenile in a high

crime area, he witnessed the juvenile “quickly turned his head away” from him. Id.

at 585, 647 S.E.2d at 135. Further, the officer testified that the juvenile “kept his

head turned away from [him] and . . . [the officer] could tell that he was not moving

 1
 STATE V. WARREN

 ELMORE, R., dissent

his mouth [while responding to the officer’s questions] as though he had something

inside of his mouth.” Id. at 585-86, 647 S.E.2d at 135. The officer alleged that

“individuals that have exhibited those characteristics have generally kept crack-

cocaine in their mouths.” Id. at 586, 647 S.E.2d at 135. Importantly, suspecting the

juvenile of hiding drugs in his mouth, the officer requested that the juvenile spit out

what was in his mouth. Id. at 581, 647 S.E.2d 132. The juvenile spit out crack cocaine

wrapped in cellophane. Id. This Court discerned that the juvenile’s “turning away

from the officer and not opening his mouth while speaking constituted evasive

actions”, and we accordingly held that the juvenile’s evasive conduct, presence in a

high crime area, and the officer’s training was sufficient to establish reasonable

suspicion. Id. at 586, 647 S.E.2d at 135.

 The I.R.T. Court relied, in part, on State v. Watson, 119 N.C. App. 395, 458

S.E.2d 519 (1995). In Watson, this Court found reasonable suspicion to justify an

investigatory seizure when police approached a convenience store located in a high

crime area and witnessed the defendant make “evasive maneuvers to avoid detection,

i.e., putting the drugs in his mouth, attempting to swallow the drugs by drinking

Coca-Cola and attempting to go into the store.” Id. at 398, 458 S.E.2d at 522. The

defendant “was ordered to spit out the objects in his mouth[.]” Id. at 396-97, 458

S.E.2d at 521. When the defendant refused, the officer applied pressure to the

 2
 STATE V. WARREN

 ELMORE, R., dissent

defendant’s throat and he spit out three baggies of crack cocaine. Id at 397, 458

S.E.2d at 519.

 I agree with this Court’s holdings in both I.R.T. and Watson. Not only were

the defendants present in high crime areas, each acted evasively when confronted by

law enforcement. However, the facts in I.R.T. and Watson are markedly different

from the facts in the case before us.

 Here, there is no question that the officer stopped defendant in a high crime

area for a traffic violation. Upon finding defendant’s license and registration to be

valid and that the car was registered to defendant, the officer issued defendant a

warning ticket. The officer began writing the warning ticket while standing at

defendant’s driver side door. The officer talked to defendant when he wrote the ticket.

In speaking with defendant, the officer alleged that he thought defendant had

something in his mouth. The following colloquy occurred at trial:

 DEFENSE COUNSEL: You said [defendant] had
 something in his mouth and he wasn’t chewing on it?

 OFFICER: Correct.

 DEFENSE COUNSEL: Was it peppermint?

 OFFICER: I don’t know.

 DEFENSE COUNSEL: Well, was there some other type of
 hard candy?

 OFFICER: I don’t know.

 3
 STATE V. WARREN

 ELMORE, R., dissent

 DEFENSE COUSEL: Did you see any type of plastic or
 anything coming out the corner of [defendant’s] mouth that
 would indicate that it was some type of packaging[?]

 OFFICER: No. . . . Just something in his mouth. I couldn’t
 tell.

 DEFENSE COUNSEL: Okay. And that caused you
 concern?

 OFFICER: I notated.

 Defense counsel asked the officer, “[w]hile you’re writing the warning ticket,

you are engaged in conversation with [defendant]?” The officer replied, “[y]es, sir.”

Defense Counsel asked, “[h]e engages in conversation back with you?” The officer

replied, “[h]e does.” The record shows that during their conversation, the officer

informed defendant that he was stopped in a high crime area and pointed out to

defendant that the Berkshire Apartments were known for their drug activity. The

officer asked defendant if he was on probation, and defendant answered that he was

not. The officer asked if defendant had any prior drug offenses, and defendant said

“he wasn’t involved in that type of stuff anymore.” Defendant informed the officer

that he was self-employed in landscaping. Defense counsel asked the officer whether

the object remained in defendant’s mouth during the conversation, and the officer

answered in the affirmative. Defense counsel questioned, “[y]ou don’t ask him about

[the object]?” The officer replied, “[t]hat’s correct.”

 4
 STATE V. WARREN

 ELMORE, R., dissent

 The officer admitted that the traffic stop turned into a drug investigation solely

because defendant was in a known drug area and because defendant had an

unidentified object in his mouth. Defense counsel questioned, “the only thing that

concerned you was some object that was in [defendant’s] mouth that you were unable

to identify?” The officer replied, “[a]lso, the area that he was coming from of course.”

While the officer was writing the warning citation, he asked defendant if there was

anything illegal in his vehicle. The officer asked defendant if he could check his

vehicle for narcotics, and defendant said no. The officer then asked defendant to step

out of his vehicle so he could search defendant’s person for “guns, drugs, or other

weapons.” The officer testified that defendant consented to the search—he “didn’t . .

. resist the search at all.” Further, the search yielded nothing illegal or suspicious.

 Notably, defense counsel asked, “[y]ou have consent to search his entire person,

do you believe that?” The officer replied, “[y]es, I do.” Defense counsel questioned,

“[b]ut you do not search his mouth?” The officer admitted, “[t]hat’s correct.” After

finding no evidence of contraband on defendant’s person, and not searching

defendant’s mouth, the officer continued to detain defendant as he called for backup.

When a second officer arrived, he was instructed to finish writing the warning

citation while the first officer conducted the canine sniff of defendant’s vehicle. It was

not until after the canine sniff test was completed that the officer searched

 5
 STATE V. WARREN

 ELMORE, R., dissent

defendant’s mouth. The officer alleged that defendant appeared to swallow

something.

 These facts, taken in totality and viewed through the eyes of a reasonable,

cautious officer, do not support the trial court’s finding that the officer had reasonable

suspicion to justify extending the traffic stop. Unlike in I.R.T. and Watson, where the

defendants took evasive actions to avoid law enforcement, the record here shows that

defendant did not act evasively. Specifically, defendant engaged in a conversation

with the officer during which he was able to speak clearly enough to inform the officer

that he was not on probation and worked in landscaping. Additionally, defendant

“didn’t . . . resist the search [of his person] at all.” Further, defendant allowed the

officer to check his license and registration, which were in good standing. In doing

so, the officer returned to his patrol vehicle, and defendant would have had an

opportunity to spit out what was allegedly in his mouth. Finally, the officer testified

that defendant was “polite” and there were no “issues” with the traffic stop.

 Of upmost importance in this case, the officer did not search defendant’s mouth

during the search of his person. Moreover, the officer admittedly never questioned

defendant about the alleged unknown item in his mouth until after the canine sniff.

Nonetheless, the majority points to the officer’s six years of experience in narcotics

detection as well as his belief that defendant was concealing something in his mouth

to support a finding of reasonable suspicion. Arguably, an experienced officer would

 6
 STATE V. WARREN

 ELMORE, R., dissent

take steps to determine what, if anything, was in a person’s mouth at the outset of a

stop when such a suspicion was the basis for the search of that person.

 Because the officer neither questioned defendant about having an item in his

mouth nor did he search defendant’s mouth, I find it highly objectionable that the

purported evasive conduct that essentially tipped the scale in favor of finding

reasonable suspicion was the officer’s mere alleged suspicion that defendant had an

unknown object in his mouth. Had the officer taken any steps to confirm his

suspicion, a canine search of defendant’s vehicle would debatably have been

permissible based upon reasonable suspicion. Egregiously, the officer neglected to

investigate his suspicion, yet still felt justified in prolonging the stop to conduct a

canine sniff of the outside of defendant’s vehicle. Notably, the officers in I.R.T. and

Watson both demanded that the defendants spit out what was hidden in their mouths

as part of the investigatory stop.

 To me, these facts suggest that the officer was acting on no more than an

“unparticularized suspicion or hunch” that defendant’s vehicle contained contraband

based on defendant’s presence in a high crime area. State v. Brown, 217 N.C. App.

566, 572, 720 S.E.2d 446, 450 (2011) writ denied, review denied, 365 N.C. 541, 742

S.E.2d 187 (2012) (citation and quotation omitted). It is well established that a

suspicion or hunch is insufficient to form the basis of reasonable suspicion. Id.

Because the facts of this case do not support a finding that the officer had reasonable

 7
 STATE V. WARREN

 ELMORE, R., dissent

suspicion to believe that criminal activity was afoot to justify the extension of the

traffic stop, I respectfully disagree with the majority’s opinion.

 Because the officer lacked reasonable suspicion, under Rodriguez, the question

for this Court becomes whether the officer unlawfully prolonged an otherwise

completed traffic stop in order to conduct a canine sniff outside of defendant’s vehicle.

Again, an officer may conduct certain unrelated checks during an otherwise lawful

traffic stop, so long as he does so in a way that does not prolong the stop. Rodriguez

v. United States, ___ U.S. ___, ___, 191 L.Ed. 2d 492, 499 (2015). The unrelated checks

include: checking the driver’s license, determining whether there are outstanding

warrants against the driver, and inspecting the automobile’s registration and proof

of insurance. Id. “These checks serve the same objective as enforcement of the traffic

code: ensuring that vehicles on the road are operated safely and responsibly.” Id.

However, “[l]acking the same close connection to roadway safety as the ordinary

inquiries, a dog sniff is not fairly characterized as part of the officer’s traffic mission.”

Id.

 In Rodriguez, the Supreme Court framed the “critical” question as “not

whether the dog sniff occurs before or after the officer issues a ticket, but whether

conducting the sniff adds time to the stop” Id. at ___, 191 L.Ed. 2d at 496. As the

Supreme Court opined, “[i]f an officer can complete traffic-based inquiries

expeditiously, then that is the amount of time reasonably required to complete [the

 8
 STATE V. WARREN

 ELMORE, R., dissent

stop’s] mission.” Id. at ___, 191 L.Ed. 2d at 499 (citation and quotation omitted)

(alteration in original). A traffic stop prolonged beyond that point is unlawful. Id.

 The majority contends that “it is unclear from the trial court’s findings whether

the execution of the dog sniff prolonged the traffic stop.” I disagree. In the instant

case, the officer’s actions inevitably prolonged the traffic stop beyond the amount of

time reasonably required to complete the stop’s mission. After checking defendant’s

license and registration and confirming that the vehicle was registered to defendant,

the officer stood by defendant’s door and began issuing him a warning ticket. The

officer could have reasonably completed writing the citation in a matter of one to two

minutes. However, the officer struck up a conversation with defendant, which led to

the officer having defendant exit the vehicle, searching defendant’s pockets, calling a

backup officer, explaining the situation to the new officer, requesting that the new

officer complete the warning ticket, and finally getting the canine from the patrol

vehicle and conducting the sniff test. While this string of events may have only

extended the stop for minutes, the stop was nonetheless extended beyond the amount

of time required to reasonably complete the stop’s mission. I am of the impression

that the time it took for the officer to complete the traffic-based inquiries of checking

defendant’s license and registration constituted the reasonable amount of time for

the stop—any holdover thereafter was unreasonable because the officer lacked

reasonable suspicion. I recognize that past precedent has held that any delay in this

 9
 STATE V. WARREN

 ELMORE, R., dissent

case was de minimis. However, in light of the Supreme Court’s holding in Rodriguez,

we are no longer bound to follow the de minimis rule.

 Because the officer had (1) finished completing the traffic-based inquiries of

checking defendant’s license and registration, (2) was in in the middle of issuing the

warning ticket, and (3) the additional time defendant was detained was used to

conduct a check that was unrelated to the officer’s otherwise lawful traffic stop, I am

of the opinion that the officer unreasonably extend the duration of the stop in order

to conduct a canine sniff of the outside of defendant’s vehicle. Further, by prolonging

the traffic stop, defendant’s Fourth Amendment rights were violated. Therefore, I

conclude that the trial court erred in denying defendant’s motion to suppress

evidence.

 10